ALTENO, Plaintiff-Appellee, v. BERAMO COMPANY, INC., Defendant-Appellant, MALICE, Defendant.

Ohio Appeals, Seventh District, Mahoning County.

No. 4066.   Decided October 15, 1959.

*Mr. Raymond Fine* and *Mr. Paul Van Such,* for plaintiff-appellee.

*Messrs. Manchester, Bennett, Powers & Ullman,* for defendant-appellant.

For further history see *Omnibus Index* in bound volume.

*Per Curiam.*   Defendant, Beramo Company, Inc., called Beramo, appeals on questions of law from a judgment of the

court of common pleas entered upon a jury verdict of $18,000.00 returned for plaintiff in her action against it and Raymond Malice, called Malice, to recover damages for personal injuries caused allegedly by the negligence of defendants.

About 5:45 o'clock on May 31, 1956, plaintiff, an employee of La France Dry Cleaning Company, was checking the day's receipts preparatory to closing the La France store for the day when she was struck on the back of her head and neck by a water-soaked composition ceiling tile, weighing approximately three pounds, injuring her.

The store from which the ceiling tile fell was the last of a row of four storerooms owned by Beramo and being razed by Malice. The roof of the La France Dry Cleaning Company store had been patched to shelter the LaFrance store temporarily. The weather immediately prior to May thirty-first had been particularly rainy.

Between the date of her injury and November 3, 1956, plaintiff was treated by one physician on twenty-two occasions, was examined by an orthopedic specialist, and treated thereafter by two other doctors thirty-five times between that time and June 18, 1957, and had consulted no doctor between that date and the time of trial on March 3, 1959.

Plaintiff worked steadily in another capacity for the La France Company from June 4, 1956, until October 13, 1956, and thereafter for Pick Ohio Hotel as cashier from May 19, 1958, to February 21, 1959, when she became a typist for Strausbaugh's Motor Company, which position she lost shortly because of inefficiency.

By appeal on questions of law Beramo contends that the very generous verdict is not supported by sufficient evidence, is excessive, against the manifest weight of the evidence; and that the trial court erred in not granting Beramo's motion for a new trial on those grounds.

The doctor who treated plaintiff thirty-five times over a five month period, whom plaintiff did not call as a witness but who testified for Beramo, upon express waiver by plaintiff, is to be commended more for his diligence in search for "physical signs whatsoever of abnormalities" than for treating her "subjective complaints" over so long a period of time.

There is evidence found by other physicians that plaintiff suffered from traumatic myositis, necessitating plaintiff wearing a brace, which condition was contributed to by a mormonal osteporosis, or a withdrawal of calcium from the bones as a result of an earlier hysterectomy, an associated osteo-arthritis of the lumbosacral spine, sacro-iliac joints and both hips, this being of the slow degenerative type, and also hypertension, all of which conditions preceded the accident of May 31, 1956, and causing plaintiff to be totally disabled while under that physician's care.

As suggested by Beramo's counsel by brief plaintiff stopped going to Dr. Calder in June, 1957, because "I just got tired, nobody wanted to help—believe me, or help me. I just discontinued" (R. 132). She never again sought medical help or treatment, and this despite the fact that her aches and pains kept getting worse (R. 134). On October 1, 1958, her lawyers sent plaintiff to Dr. Paul Mahar, not for treatment or care, but to examine her for the purpose of testifying at the trial (R. 203). On that date, despite the fact that she had not sought medical help for sixteen months, she complained to Dr. Mahar of severe headaches, dizziness, blackout spells, painful right shoulder, low back pain, and nervousness. Dr. Mahar gave her a complete examination and found a tenderness to palpation in the back, with muscle spasm, limitation in tending forward, backward and laterally, and limitation of motion in the upper right arm (R. 206). He diagnosed her difficulties as a traumatic bursitis of the right shoulder and myositis and low back strain (R. 207). He referred her to Dr. Kalfus as a neurological consultant, but plaintiff did not see fit to call the latter as a witness (R. 214). Dr. Mahar then testified that at the time of his examination he felt that plaintiff was eighty to ninety percent disabled (R. 216).

Dr. L. K. Reed, Beramo's physician witness, testified that he examined plaintiff on December 26, 1956, seven months after the accident; that he found no pain or limitation of motion in the neck, and no limitation of motion in the right arm; that plaintiff did not even complain to him in that respect; that no neurological abnormalities were found; that his diagnosis was glandular obesity, a polyp in the left ear, chronic low back strain

and hypertensive cardiovascular disease with hypertension; that he did not think there was any causal relationship between any of his findings and the accident, and felt that the back strain was due to plaintiff's obesity. Dr. Reed agreed with Dr. Mahar that if bursitis or myositis is to be blamed on trauma, that objective symptoms must occur within a day or two after the trauma.

Counsel for Beramo argues that giving plaintiff the benefit of every doubt, the medical testimony simply does not justify the verdict of $18,000.00.

The medical testimony in the case we review is so decidedly conflicting and contradictory as to seem to us to make applicable, and particularly appropriate, the admonition of the Supreme Court of the United States in the case of *Haley* v. *Ohio*, 332 United States Reports, Page 596 at page 624:—

"Until a better way is found for testing credibility than by the examination of witnesses in open court, we must give trial courts and juries that wide discretion in this field to which a living record, as distinguished from a printed record, logically entitles them. In this living record there are many guideposts to the truth which are not in the printed record. Without seeing them ourselves we will do well to give heed to those who have seen them."

Accordingly we cannot conclude that the trial judge erred in not granting Beramo's motion for a new trial on the assigned grounds that the verdict of the jury is against the manifest weight of the evidence and not supported by sufficient evidence.

However, we believe that the verdict of the jury is excessive, but not in a degree to imply the influence of passion or prejudice. In the exercise of sound discretion we make a remittitur of the excess. See *Poske* v. *Mergl*, 169 Ohio St., 70 at page 73.

If plaintiff in writing accepts a remittitur of all of the verdict in excess of $15,000.00 within thirty days from the date of this court's docket entry the judgment of the trial court will be affirmed, otherwise reversed on the ground that the verdict is excessive.

GRIFFITH, P. J., PHILLIPS and DONAHUE, JJ., concur.